# STATE OF WEST VIRGINIA

# SUPREME COURT OF APPEALS

**MARY R. KAROPCHINSKY,**
**Claimant Below, Petitioner**

**FILED**
May 7, 2018
**EDYTHE NASH GAISER**, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**vs.)** **No. 17-1105** (BOR Appeal No. 2052005)
(Claim No. 2016002306)

**TELATLANTIC COMMUNICATIONS, INC.,**
**Employer Below, Respondent**

## MEMORANDUM DECISION

Petitioner Mary R. Karopchinsky, by Robert L. Stultz, her attorney, appeals the decision of the West Virginia Workers' Compensation Board of Review. Telatlantic Communications, Inc., did not file a response to the petition for appeal.

This appeal involves a request for the addition of secondary conditions to the claim, as well as requests for medical treatment to treat those secondary conditions. By an Order dated January 29, 2016, the claims administrator denied Ms. Karopchinsky's request for a physiatrist evaluation for the diagnosis of cervical radiculitis. On April 20, 2016, the claims administrator denied her request to add cervical radiculitis as a compensable component of the claim. The Workers Compensation Office of Judges affirmed the Orders of the claims administrator in an Order dated May 8, 2017. This appeal arises from the Board of Review's Final Order dated November 17, 2017, in which the Board affirmed the May 8, 2017, Order of the Office of Judges. The Court has carefully reviewed the records, written arguments, and appendices contained in the briefs, and the case is mature for consideration.

This Court has considered the petitioner's brief and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, Ms. Karopchinsky's brief, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

Ms. Karopchinsky was injured on June 14, 2015, while employed by Telatlantic Communications, Inc, as a combination technician. She sustained an injury to her right elbow

1

and right shoulder when the truck she was driving veered into a ditch. The jolting caused her right foot to slip onto the accelerator and she struggled to maintain control of the vehicle.

Ms. Karopchinsky was treated by Karen Spotloe, PA-C, at Belington Community Medical Services Association on July 1, 2015. Ms. Karopchinsky presented with bilateral shoulder pain, with the right side being greater than the left, and pain in her right elbow. She denied any head trauma or neck symptoms. Ms. Spotloe recorded the active problems as being lateral epicondylitis (tennis elbow) and shoulder sprain. Examination of the neck revealed no decrease in suppleness, no abnormalities, and not cervical mass. The assessment was shoulder sprain, bilateral; wrist sprain; shoulder strain, bilateral; and lateral epicondylitis of the right elbow. Ms. Karopchinsky was referred to a physical therapist for her shoulder and elbow pain.

Ms. Karopchinsky treated with Becky Poling, P.T., at Broaddus Total Therapy Center on July 23, 2015. She presented with pain, muscle weakness, and decreased activity tolerance. After finding that Ms. Karopchinsky was a good candidate for rehabilitation, Ms. Poling recommended a six-week treatment plan that would enable Ms. Karopchinsky to have decreased bilateral upper trapezius and upper extremity pain, increased lateral shoulder abduction strength, and the ability to return to driving without upper extremity or neck symptoms. The assessment was shoulder sprain, bilateral; sprain of wrist and hand, bilateral; wrist sprain; and lateral epicondylitis of the right elbow.

On September 28, 2015, Ms. Karopchinsky was examined by Joshua Sykes, M.D., with UHC Orthopaedics and Sports Medicine, after a referral from Ms. Spotloe. Dr. Sykes noted that Ms. Karopchinsky had been participating in physical therapy, and that therapy was helping her symptoms. The neurologic exam revealed intact dermatomal sensation. The musculoskeletal examination of the right shoulder revealed positive impingement, but the pain was not consistent with rotator cuff disease. The assessment was cervical radiculitis and shoulder impingement, right. Dr. Sykes recommended a continuation of participation in physical therapy, and he wanted to see her again in a couple of months to assess her progress.

Ms. Karopchinsky returned to Dr. Sykes on November 11, 2015, for a follow-up evaluation. She presented with bilateral shoulder pain, with the right side being greater than the left side. Dr. Sykes noted that Ms. Karopchinsky reported some improvement with her therapy and she continues to take Ketoprofen for pain. Dr. Sykes also noted that her clinical picture is complicated by her history of carpal tunnel syndrome surgery and persistent numbness. The assessment was radiculitis of the right cervical region. Dr. Sykes believes that most of Mr. Karopchinsky's pain is coming from her cervical spine. He noted that she has had therapy on both her shoulders and her cervical spine, but continues to have pain that radiates from her neck down her arm and the region of her thumb. Dr. Sykes ordered an MRI and stated that conservative treatment has failed. Dr. Sykes planned to refer her to Russell Biundo, M.D., a physiatrist, and would see Ms. Karopchinsky again as needed.

On December 2, 2015, Dr. Sykes requested authorization for an MRI of the cervical spine without contrast, as well as a referral to physiatrist Biundo for the treatment of right sided radicular pain. The claims administrator denied Dr. Sykes's request in an Order dated January

29, 2016. The claims administrator denied the requests because the accepted injuries in the claim are right shoulder and elbow strain. Ms. Karopchinsky protested the claims administrator's Order.

An MRI report dated December 6, 2015, from Broaddus Hospital, showed degenerative changes, most prominent at C6-7. Ms. Karopchinsky's MRI of the cervical spine revealed shallow posterior disc osteophyte without significant central canal or foraminal stenosis at C2-3, C5-6, and C6-7. At the C6-7 level there was a posterior disc osteophyte with moderate central canal stenosis and mild flattening of the cord. There was also moderate bilateral foraminal stenosis at the C6-7 level combined with facet arthropathy. During the litigation process, the employer submitted an MRI report of the cervical spine dated October 2, 2005, which revealed tiny central disc bulges at C6-7, C5-6, and C2-3, without significant impingement.

Ms. Karopchinsky testified at a deposition held on April 7, 2016, that she has pain from the bottom of her neck with bad spasms across her shoulder. She acknowledged that she had prior neck problems and headaches, but noted that the pain was more severe following her work injury. She also acknowledged that she had another vehicle accident on April 7, 2016, for which she is receiving treatment for her neck and shoulder.

Dr. Sykes submitted a Diagnosis Update request with the claims administrator on April 12, 2016, seeking to add the diagnosis of cervical radiculitis as a compensable component of the claim. On April 20, 2016, the claims administrator denied Dr. Sykes's request to add the diagnosis of cervical radiculitis as a compensable component of the claim. The claims administrator determined that the diagnosis is not related to the work injury of June 14, 2015. Ms. Karopchinsky protested the claims administrator's Order.

An independent medical evaluation report was generated by P. Kent Thrush, M.D., on January 23, 2017. Dr. Thrush addressed Ms. Karopchinsky's carpal tunnel issues and noted that she had normal range of motion of the neck and shoulders. In an Addendum Report dated March 1, 2017, Dr. Thrush stated that there was no evidence of cervical radiculitis and no past medical history consistent with the diagnosis of cervical radiculitis.

On May 8, 2017, the Office of Judges issued an Order concluding that Ms. Karopchinsky failed to establish by a preponderance of the evidence that the requested diagnosis of cervical radiculitis is causally related to the compensable injury of June 14, 2015. Accordingly, the claims administrator's Order dated April 20, 2016, denying cervical radiculitis as a secondary condition to the claim was affirmed. The Office of Judges also affirmed the April 20, 2016, claims administrator Order denying the request for a physiatrist referral for cervical radiculitis. In its Order, the Office of Judges reasoned that the injury occurred on June 14, 2015, and the claim was held compensable for a right shoulder and elbow strain. Mr. Karopchinsky denied having neck or head symptoms when she sought treatment. A diagnosis of cervical radiculitis wasn't made by Dr. Sykes until September 28, 2014, which was over three months removed from the compensable injury. The Office of Judges also noted that the diagnostic evidence indicates that the radiculitis symptoms are the result of degenerative changes. An MRI of the cervical spine performed in 2005, revealed central disc bulges at C2-3, C5-6, and C6-7 without significant

impingement. An MRI performed over ten years later revealed disc osteophytes at the same levels with moderate central canal stenosis, as well as moderate foraminal stenosis at the C6-7 level caused by the C6-7 osteophyte. In the end, the Office of Judges found that the evidence fails to indicate a work-related diagnosis of cervical radiculitis. Because the requested physiatrist referral is to treat Ms. Karopchinsky's cervical radiculitis, which is not a compensable component of the claim, the Office of Judges affirmed the claims administrator's decision to deny the request for a physiatrist referral.

On November 17, 2017, the Board of Review adopted the conclusions and findings of the Office of Judges and affirmed its Order. We agree with the decision of the Office of Judges, as affirmed by the Board of Review. The evidence does not support the position that the requested diagnosis and treatment is causally related to the compensable injury, or from the events which caused the compensable injury.

For the foregoing reasons, we find that the decision of the Board of Review is not in clear violation of any constitutional or statutory provision, nor is it clearly the result of erroneous conclusions of law, nor is it based upon a material misstatement or mischaracterization of the evidentiary record. Therefore, the decision of the Board of Review is affirmed.

Affirmed.

**ISSUED: May 7, 2018**

**CONCURRED IN BY:**
Chief Justice Margaret L. Workman
Justice Robin J. Davis
Justice Menis E. Ketchum
Justice Allen H. Loughry II
Justice Elizabeth D. Walker

4